**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HEALTHNBEAUTY.LIFE INC., an Illinois corporation, | Case No. 26-601 (Judge Tapp) |
| Plaintiff, | |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFF HEALTHNBEAUTY.LIFE INC'S OPPOSITION TO DEFENDANT THE UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF QUESTIONS INVOLVED ................................................................... 6

II.  INTRODUCTION .......................................................................................................... 8

III.  SUMMARY OF FACTS ................................................................................................ 9

IV.  ARGUMENT .............................................................................................................. 14

    A.  Standard of Review ........................................................................................... 14

        1.  Motion to Dismiss – RCFC 12(b)(1) ....................................................... 15

        2.  Motion to Dismiss – RCFC 12(b)(6) ....................................................... 16

    B.  The Government Improperly Asks the Court to Review Documents Outside the Complaint at the Pleading Stage. ................................................................... 17

    C.  HNBL Does Not Contest Dismissal of Count IV at This Stage. .......................... 17

    D.  HNBL has Pled the Essential Elements of its Breach of Contract Claim and Any Inquiry Beyond the Pleadings is a Factual Issue That Cannot be Resolved Before Discovery. ................................................................................ 18

        1.  HNBL has plausibly alleged mutuality of intent to contract and offer and acceptance. ...................................................................................... 20

        2.  HNBL has plausibly alleged consideration............................................... 26

        3.  HNBL has plausibly alleged a breach....................................................... 30

        4.  HNBL has sufficiently alleged authority to contract. ............................... 31

    E.  HNBL has Pled the Essential Elements of its Breach of the Implied Covenant of Good Faith and Fair Dealing Claim. ............................................................... 33

    F.  The Fiscal Responsibility Act of 2023 Does Not Extinguish HNBL's Claims.... 34

V.  CONCLUSION............................................................................................................ 37

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Algonac Manufacturing Company v. United States*
192 Ct. Cl. 649 (1970) ...................................................................................................29

*Arbitraje Casa de Cambio, S.A. de CV. v. United States*
79 Fed. Cl. 235 (2007) ...................................................................................................32

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)........................................................................................................17

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)........................................................................................................16

*Brandt v. Hickel*
427 F.2d 53 (9th Cir. 1970) ...........................................................................................12

*Carter v. United States*
102 Fed. Cl. 61 (2011).....................................................................................................26

*City of El Centro v. U.S.*
922 F.2d 816 (Fed. Cir. 1990)....................................................................................26, 27

*Crestview Clinical Laboratory, LLC v. United States*
181 Fed. Cl. 1 (2026) ................................................................................................ passim

*Dotcom Associates I, LLC v. United States*
112 Fed. Cl. 594 (1981) ..................................................................................................33

*Engage Learning, Inc. v. Salazar*
60 F.3d 1346 (Fed. Cir. 2011)........................................................................................15

*Erickson v. Pardus*
551 U.S. 89 (2007)..........................................................................................................16

*Fisher v. United States*
128 Fed. Cl. 780 (2016) ..................................................................................................19

*Greenlee County, Ariz. v. United States*
487 F.3d 871 (Fed. Cir. 2007)....................................................................................35, 36

*Hanlin v. United States*
214 F.3d 1319 (Fed. Cir. 2000)......................................................................................15

*Hanlin v. United States*
316 F.3d 1325 (Fed. Cir. 2003)..................................................................................19, 32

*Holmes v. United States*
657 F.3d 1303 (Fed. Cir. 2011)..........................................................................................15

*Hometown Fin., Inc. v. United States*
409 F.3d 1360 (Fed. Cir. 2005)....................................................................................19, 20, 21

*King v. United States*
159 Fed. Cl. 450 (2022) ........................................................................................................19

*Laborant, LLC v. United States*
180 Fed. Cl. 76 (2026) .................................................................................................. passim

*Leonardo v. United States*
60 Fed. Cl. 126 (2004) ..................................................................................................32, 33

*Lippmann v. United States*
127 Fed. Cl. 238 (2016) ......................................................................................................17

*Mendez v. United States*
121 Fed. Cl. 370 (2015) ......................................................................................................19

*Metcalf Constr. Co. v. United States*
742 F.3d 984 (Fed. Cir. 2014)............................................................................................33

*Morse Diesel International, Inc. v. United States*
66 Fed. Cl. 788 (2005) ........................................................................................................14

*OAO Corp. v. United States*
17 Cl. Ct. 91 (1989) ............................................................................................................22

*Oliva v. United States*
961 F.3d 1359 (Fed. Cir. 2020)..........................................................................................18

*Peninsula Grp. Cap. Corp. v. United States*
93 Fed. Cl. 720 (2010) ........................................................................................................20

*Portland Mint v. United States*
102 F.4th 1371 (Fed. Cir. 2024) ....................................................................................22, 23

*Precision Pine & Timber, Inc. v. United States*
596 F.3d 817 (Fed. Cir. 2010)............................................................................................36

*Rudder v. Williams*
666 F.3d 790 (D.C. Cir. 2012)............................................................................................16

4

*Silverman v. United States*
230 Ct. Cl. 701 (1982) ...................................................................................................22

*Simms v. District of Columbia*
699 F. Supp. 2d 217 (D.D.C. 2010) ..............................................................................16

*Sin Hang Lee v. United States*
142 Fed. Cl. 722 (2019). (Motion.).......................................................................24, 25

*Skinner v. Switzer*
562 U.S. 521 (2011)........................................................................................................14

*Sommers Oil Co. v. United States*
241 F.3d 1375 (Fed. Cir. 2001).....................................................................................16

*Thermalon Indus., Ltd. v. United States*
34 Fed. Cl. 411 (1995) ...................................................................................................25

*Thomson v. United States*
174 Ct. Cl. 780 (1966) ...................................................................................................22

*Trauma Serv. Grp. v. United States*
104 F.3d 1321 (Fed. Cir. 1997)...................................................................15, 16, 18

*TrinCo Inv. Co. v. United States*
722 F.3d 1375 (Fed. Cir. 2013).....................................................................................16

*U.S. v. Mitchell*
463 U.S. 206 (1983)........................................................................................................15

*Woll v. United States*
45 Fed. Cl. 475 (1999) ...................................................................................................26

**FEDERAL STATUTES, REGULATIONS, AND RULES**

28 U.S.C. § 1491(a)(1)...........................................................................................................15

Rules of the United States Court of Federal Claims
Rule 12 .............................................................................................................................6
Rule 12(b)(1)..................................................................................................................15

**OTHER AUTHORITIES**

1 Williston, Contracts § 102 (1957)....................................................................................26

Fiscal Responsibility Act of 2023 (Pub. L. No. 118-5) ....................................................7

Plaintiff, HEALTHNBEAUTY.LIFE INC. ("HNBL" or "Plaintiff"), pursuant to Rule 12 of the United States Court of Federal Claims, by and through its undersigned counsel, files this opposition ("Opposition") to Defendant the United States of America's (the "Government" or "Defendant") Motion to Dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted ("Motion"). Plaintiff requests this Court deny Defendant's Motion as to Counts I through III. In support of its Opposition, Plaintiff relies upon the pleadings, the record and the following brief.

## I.    STATEMENT OF QUESTIONS INVOLVED

A.    Whether Plaintiff's Complaint sufficiently alleges that the Government breached an express or implied-in-fact contract where the

(i)    Government made an offer to reimburse HNBL at the Medicare rate if it provided the testing services covered by the Uninsured Program in compliance with the contractual Terms and Conditions;

(ii)    HNBL accepted the Government's offer as required by the Government including, agreeing to the Terms and Conditions, performing the testing services and timely filing the claims for payment in reliance upon the multiple express representations by the Government that it "will" reimburse providers for claims meeting the requirements under the Terms and Conditions; and

(iii)    consideration exists based on HNBL's participation in the COVID-19 UIP and its ongoing compliance with the Terms and Conditions, and specifically the services were bargained for because the Government sought them in exchange for a reimbursement promise and HNBL provided them in

exchange for that promise.

(iv)    Whether HNBL sufficiently alleges the Government breached the Contract by failing and refusing to pay HNBL at least $8.8 million in UIP obligated payments due and owing to it for claims submitted before the March 22, 2022 UIP claims cut-off date ("Claims Cut-Off Date").

(v)    Whether HNBL sufficiently alleges the Government representative, the then-Secretary of the Department of Health and Human Services, Xavier Becerra, had the power to approve the HRSA Uninsured Program, authorize and control the contracts with providers and would timely reimburse eligible providers' submitted claims generally at 100 percent of Medicare rates, which demonstrates he had actual authority to bind the Government in contract.

B.   Whether Plaintiff's Complaint sufficiently alleges that the Government materially breached the implied covenant of good faith and fair dealing by intentionally delaying the Assessment to avoid paying the timely submitted claims due under the Contract and continuing to represent to HNBL after the HRSA Claims Cut-Off Date, that its claims were processed and would be paid, thus acting in bad faith and destroying HNBL's reasonable expectations that it would receive the "fruits of the contract."

C.   Whether HNBL sufficiently alleges the Fiscal Responsibility Act of 2023 (Pub. L. No. 118-5), that expressly rescinded unobligated funds, is not relevant to this case because the outstanding claims are obligated and, in any event, may be paid under the Judgment Fund.

## II.    INTRODUCTION

This case arises from the Government's refusal to pay a clinical laboratory that answered its emergency call during one of the gravest public health crises in a generation. At the height of the COVID-19 pandemic (also referred to herein as the "Pandemic"), HRSA urged health care providers to step up and test the uninsured, promising reimbursement at 100 percent of Medicare rates for every eligible claim. Plaintiff Healthnbeauty.Life Inc. ("HNBL") answered that call. It invested in high-complexity laboratory equipment, engaged workers, contracted with approximately thirty companies for specimen collection, and submitted more than $8.8 million in COVID-19 testing claims before HRSA's March 2022 claims cut-off date. HRSA acknowledged receipt of those claims, but HNBL has never been paid a single dollar.

The Government's Motion to Dismiss should be denied as to Counts I through III. Two other recent decisions of the Court of Federal Claims, *Crestview Clinical Laboratory, LLC v. United States*, 181 Fed. Cl. 1 (2026) ("*Crestview*") and *Laborant, LLC v. United States*, 180 Fed. Cl. 76 (2026) ("*Laborant*"), resolved nearly identical motions filed by the Government asserting the same arguments against the same program. In both cases, the Court rejected the Government's contract formation arguments as unpersuasive, held that the plaintiffs plausibly alleged an express and/or implied-in-fact contract and a breach of the implied covenant of good faith and fair dealing, declining to dismiss those claims. As discussed in this Opposition, the Government recycles many of the same arguments and cited cases and does not offer material factual or legal distinctions to warrant a different result.

In light of these clear decisions, the Government's arguments are foreclosed by this Court's recent rulings in *Crestview* and *Laborant*, and their repetition here merits the same results. HNBL has stated plausible claims for breach of express contract, breach of implied-in-fact contract, and

breach of the implied covenant of good faith and fair dealing and is entitled to pursue discovery to further support its claims and refute the Government's alleged grounds for dismissal. The Motion should be denied as to Counts I through III.

### III.    SUMMARY OF FACTS

Starting in March 2020, Congress enacted several emergency assistance programs intended to address the onset of the COVID-19 pandemic, including an effort to expand access to COVID-19 testing for all individuals, regardless of insurance status or ability to pay. The goal to solicit, induce and engage clinical laboratories to furnish emergency COVID-19 testing services and thereby set up the COVID-19 Uninsured Program ("UIP") was part of the broader public health response to control the spread of the COVID-19 virus and ensure equitable access to resources to the benefit of all persons within the United States, including undocumented immigrants and international visitors.

The programs enacted by the Government that funded the UIP included the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), the Families First Coronavirus Response Act ("FFCRA"), the Paycheck Protection Program and Health Care Enhancement Act ("PPPHCEA"), and the American Rescue Plan Act of 2021 ("ARPA"), (collectively, the "UIP Funding Laws"). The UIP Funding Laws contained provisions meant to induce private sector providers to furnish COVID-19 testing services to uninsured individuals to ensure that financial barriers did not prevent access to testing and identification of active spread – recognized to be an untenable line of business for the private sector without the support and guarantees by the Government to receive payment for the work.

In 2020, the Government called on all diagnostic laboratories (like HNBL) to increase their testing capacity to help our nation quickly isolate individuals who tested positive in an effort to

contain the virus while a vaccine was still under development. In late 2021, Chicago's COVID-19 cases, hospitalizations and deaths reached their highest peak. At that time, the principal place of business of HNBL's clinical laboratory was Chicago, Illinois. Based on the escalated public health crisis and the Government's plea for testing services, HNBL expeditiously answered the call to aid in testing, making substantial monetary investments to establish a high complexity laboratory, including the purchase of two PCR testing systems, and securing lab space for testing.

In its Motion, the Government again mischaracterizes the United States Department of Health & Human Services ("HHS"), Health Resources and Services Administration ("HRSA") UIP as "an assistance fund, not a payment guarantee" and that it did not "create entitlements for, or commercial arrangements with, HNBL." (Motion, p. 1.) The Government also erroneously asserts that HRSA was not "purchasing services from HNBL for its own benefit - nor, critically was it undertaking or promising to reimburse any given claim." (*Id.*)

The Government's statements are not only incorrect, but they also do not support the Motion to Dismiss. In fact, most of the Government's statements, including those related to the UIP, COVID relief funding and HRSA's alleged Assessment process are *not relevant* to its Motion. Contrary to the Government's arguments, the Complaint sufficiently alleges grounds for relief, namely, the Government has failed to honor its contractual obligations to pay HNBL for the critical testing services it rendered during the Pandemic. HNBL has sufficiently pled that the Government created legal obligations to pay HNBL for COVID-19 testing services that were rendered and for which claims were submitted prior to the shut-down of the HRSA payment portal in March 2022 and 2023 FRA. Moreover, as the HHS, Office of Inspector General ("OIG") noted, claims submitted before the program submission deadlines were continuing to be adjudicated *and*

10

*paid* after HRSA was no longer accepting UIP claims.[1] HNBL's claims at issue in the instant matter were submitted before the program submission deadline. (Plaintiff's Complaint, ¶¶ 34, 70, 71(a).) Further, the Government's passing of the Fiscal Responsibility Act ("FRA") on June 3, 2023, rescinding COVID-19 remaining *unobligated* funds, is not relevant when the amounts due and owing to HNBL are obligated, have not been repealed and can and should be paid, if necessary, from the Judgment Fund.

From the start of the Pandemic, HHS was responsible for UIP oversight and policy decisions. As part of its oversight, HHS delegated administration of the UIP to HRSA. The Government's promise of reimbursement was not ambiguous. HRSA represented to providers that "Your Role is Critical. Ensure You Are Reimbursed" and promised that the UIP "*would provide* claims reimbursement for eligible COVID-19 testing or treatment of uninsured individuals with COVID-19 on or after February 4, 2020." (Plaintiff's Complaint, ¶ 32 (emphasis added).) HRSA's official website expressly stated:

> As part of enacted legislation - the Families First Coronavirus Response Act, the Paycheck Protection Program and Health Care Enhancement Act, and the Coronavirus Response Aid, Relief, and Economic Security (CARES) Act, and the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) - the U.S. Department of Health and Human Services (HHS) will provide claims reimbursement to health care providers generally at Medicare rates for testing uninsured individuals for COVID-19, for treating uninsured individuals with a COVID-19 primary diagnosis, and for COVID-19 vaccine administration to the uninsured. Physicians and other health care providers are true heroes – especially during the COVID-19 pandemic – and HHS is grateful for their continued dedication.
>
> HRSA COVID-19 Claims Reimbursement, https://coviduninsuredclaim-stage.linkhealth.com, (last visited August 3, 2026).

---

[1] *See* Plaintiff's Complaint, ¶ 37, fn. 4; OIG Report No. A-02-21-01013 (July 2023), available at https://oig.hhs.gov/documents/audit/6536/A-02-21-01013-Complete%20Report.pdf.

This promise was memorialized in the UIP Terms and Conditions, which stated: "*The Secretary will reimburse* the [provider] generally at 100 percent of Medicare rates…for the COVID-19 Testing and/or Testing-Related Items and Services that [provider] provided to FFCRA Uninsured Individuals for which the [provider] submits claims to the FFCRA Relief Fund[,]" (Motion Appendix, p. A66 (emphasis added)) or "*The Secretary will reimburse* the [provider] generally at 100 percent of Medicare rates. . . for the items and services that [provider] provided to Uninsured Individuals for which the [provider] submits claims to the Uninsured Program Fund unless otherwise noted." (Motion Appendix, pp. A78, A89 (emphasis added).) The word "will," repeated throughout the UIP Terms and Conditions and the Government's public representations, is the same mandatory language courts have long recognized as creating binding government obligations. The FAQs HRSA published on its official website reinforced this: the program "provides reimbursements on a rolling basis directly to eligible providers," and "the majority of claims are reimbursed within 30 days." (Motion Appendix, p. A2, A19.) HRSA's training webcast similarly represented that "[t]he program *will provide* claims reimbursement." (Motion Appendix, p. A33 (emphasis added).)

Instead of honoring its representations to providers, however, the Government abandoned its heroes that answered the desperate call of the Government to serve this country in one of its greatest times of need in a generation. HNBL depended on "trust in the government as a fair partner" when it contracted to furnish expedited COVID-19 testing services to the UIP. The Government's position "that it can renege" on its solicitations, representations, and contractual commitments and "to say to [HNBL], 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government." *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir. 1970). The Government's failures to live up to its contractual commitments cannot and should not be

12

condoned by this Court. Additionally, as detailed below, Plaintiff has met its pleading obligations, and the Court should deny the Motion in its entirety.

As part of the UIP Funding Laws, the Government established the UIP, administered by the HRSA, to conduct COVID-19 tests for uninsured individuals at no cost to the patient. The UIP Funding Laws' express commitment was to reimburse eligible health care providers for health care related services. Specifically, the UIP Funding Laws directed the Government to expeditiously make payments to providers for claims related to health care services, including COVID-19 testing. (Plaintiff's Complaint, ¶¶ 6-12.) The Government effectively represented to the public, including the providers who stepped up to furnish testing services, it "shall pay" providers by repeatedly referencing that it "will pay" or "will reimburse" qualifying claims throughout multiple terms and conditions set out for the UIP. The term "will" is interchangeable with the word "shall," both demonstrating a legal obligation.

The UIP Terms and Conditions identified mutual obligations of the Government and providers. While the Government required providers to make several representations in order to participate in the program, including that their claims "will" be full and complete, similarly, the Government represented that *"[t]he Secretary will reimburse* the [provider] generally at 100 percent of Medicare rates (including any amounts that would have been due to the provider as patient cost sharing) for the items and services that [the provider] provided to Uninsured Individuals for which the [provider] submits claims to the Uninsured Program Fund unless otherwise noted." (Emphasis added; Motion Appendix, p. A89; *see also* Plaintiff's Complaint, ¶ 50.)

The Government's obligation to reimburse providers was also emphasized in numerous documents that are part and parcel of their contractual commitment including the FAQs which

13

identify the Government's acknowledgment that it would pay providers by stating "[t]his program provides reimbursements on a rolling basis directly to eligible providers for claims attributed to the testing, treatment, or vaccine administration for COVID-19 for uninsured individuals." (Motion Appendix, p. A2, General Questions, *FAQs for COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment and Vaccine Administration*.) HRSA also presented a webcast entitled "Getting Started with the HRSA COVID-19 Uninsured Program," emphasizing that "[t]he program will provide claims reimbursement." (Motion Appendix, p. A33.)  As discussed in detail below, these statements and affirmative representations by the Government promising payments to providers submitting qualifying claims collectively establish the Government's contractual obligation to make payments under the UIP, including to HNBL. Plaintiff, as such, has sufficiently pled non-frivolous allegations of an express or implied-in-fact contract and the Government's Motion must be denied.

## IV.    ARGUMENT

### A.    Standard of Review

When determining a motion to dismiss, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Morse Diesel International, Inc. v. United States*, 66 Fed. Cl. 788, 797 (2005) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). The allegations in the pleading must contain a short, plain statement showing a plausible entitlement to relief. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). The question for the Court at this juncture is not whether HNBL will ultimately prevail, but whether there are sufficient allegations to cross this Court's threshold. *Id.* Here, the Government has challenged Plaintiff's standing to bring its claim as well as this Court's jurisdiction to decide the claim. In the instant case, the Government's Motion must be denied

14

because HNBL has established jurisdiction for this Court, its standing to appear before this Court, and its right to recover damages under the stated claims as described in detail below.

### 1.        Motion to Dismiss – RCFC 12(b)(1)

The Tucker Act grants the Court of Federal Claims broad jurisdiction over "express or implied contract(s) with the United States." 28 U.S.C. § 1491(a)(1). If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit. *U.S. v. Mitchell*, 463 U.S. 206, 216, (1983). For purposes of Tucker Act jurisdiction, alleged contracts enjoy a presumption that money damages are available for breach. *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). Additionally, "any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the government." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997). To survive a challenge to jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the Federal Circuit has held unambiguously that "jurisdiction ... requires no more than a non-frivolous allegation of a contract with the government." *Engage Learning, Inc. v. Salazar*, 60 F.3d 1346, 1353 (Fed. Cir. 2011) (citing, *e.g., Lewis v. United States*, 70 F.3d 597, 602, 604 (Fed. Cir. 1995)); *see also Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) (explaining that a non-frivolous allegation of the existence of an implied-in-fact contract is sufficient to confer jurisdiction unless another statute divests the court of jurisdiction). Thus, a plaintiff merely "must show that either an express or implied-in-fact contract underlies its claim." *Trauma Serv. Grp.*, 104 F.3d at 1325 (Fed. Cir. 1997) (stating "[a] well-pleaded allegation [of express or implied-in-fact contract] in the complaint is sufficient to overcome challenges to jurisdiction." (citing *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed. Cir. 1992))).

15

Thus, the relevant issue in a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

### 2.       Motion to Dismiss – RCFC 12(b)(6)

When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint," and "must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). "To avoid dismissal under RCFC 12(b)(6), a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'" *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Further, a cause of action requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). Plaintiffs are not required to plead "detailed factual allegations" to state claims. *Bell Atl. Corp.*, 550 U.S. at 555; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (stating "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (citations and alteration omitted). Plaintiffs need only set forth enough facts to state claims that are facially plausible. *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Simms v. District of Columbia,* 699 F. Supp. 2d 217, 222 (D.D.C. 2010) (citation omitted). The standard

calls only for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**B.      The Government Improperly Asks the Court to Review Documents Outside the Complaint at the Pleading Stage.**

As an initial matter, the Government's Motion relies on certain documents attached via an Appendix to its Motion. Although the Court may look outside the four corners of the complaint in a motion to dismiss, doing so is limited to "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *Lippmann v. United States*, 127 Fed. Cl. 238, 247 (2016) (internal citations omitted).

The Court should not consider the Government's statements or arguments related to the Exhibit entitled "Standard Operating Procedure (SOP #TBD)." (Motion Appendix, pp. A100-A103.) HNBL has not mentioned this document in the Complaint and it does not appear to have been adopted or published on a public government website. The Government makes a limited, unsupported, reference to this document in its argument to dismiss the claim for breach of good faith and fair dealing stating that it "followed its standard operating procedures." (Motion, p. 28.) Additionally, the Government cites this unadopted policy dated February 2022 as support for its unfounded and irrelevant arguments on the HRSA funding approval process. The Court should not consider this document as it is not referenced or incorporated by reference in Plaintiff's Complaint, is not integral to HNBL's claims and is not subject to judicial notice.

**C.      HNBL Does Not Contest Dismissal of Count IV at This Stage.**

HNBL does not contest dismissal of Count IV at this stage. This court dismissed identical money-mandating claims on the same arguments in *Crestview* and *Laborant*, and HNBL concedes that result here in the interest of judicial economy. That concession is made solely for purposes of

this Motion. HNBL expressly disagrees with the underlying reasoning and preserves all rights to raise the money-mandating argument on appeal or in any subsequent proceeding. The concession is without prejudice to, and has no bearing on, Counts I through III, which rest on an independent jurisdictional foundation (HNBL's non-frivolous allegation of a contract with the United States) and which must be denied regardless of the Court's resolution of Count IV.

**D.      HNBL has Pled the Essential Elements of its Breach of Contract Claim and Any Inquiry Beyond the Pleadings is a Factual Issue That Cannot be Resolved Before Discovery.**

Plaintiff's Complaint asserts counts for breach of express contract (Count I), alternatively, breach of an implied-in-fact contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). The Government's Motion claims Plaintiff fails to plausibly allege *any* of the elements of contract formation to sustain Counts I through III. The Government's Motion also claims that even if there was a contract, Plaintiff has failed to plausibly allege that HRSA breached the contract. Both of these assertions are inaccurate, and the Court of Federal Claims has already rejected many of the Government's similar arguments in *Crestview* and *Laborant*.

The elements of a breach of contract claim are: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020) (quotation omitted). Therefore, to state a claim for breach of contract, a plaintiff "must allege either an express or an implied-in-fact contract, and the breach of that contract." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Plaintiff alleges both the contract and the breach in its Complaint.

Where a plaintiff claims that the government has breached an express or implied-in-fact contract, it need only make a "non-frivolous *allegation* of a contract with the government," which Plaintiff has clearly done. *Mendez v. United States*, 121 Fed. Cl. 370, 378 (2015) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)) (emphasis in original). To sustain its claim, a plaintiff must plausibly plead the elements of a contract with the government: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government." *Fisher v. United States*, 128 Fed. Cl. 780, 785 (2016) (citing *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009) (citation omitted)); *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005); *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

The requirements for showing the existence of a contract[2] with the government are the same whether the contract is express or implied-in-fact. *Hanlin*, 316 F.3d at 1328. The difference between the two types of contracts is the evidence used to establish those requirements. In an implied-in-fact contract, a "meeting of minds… 'is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* (citing *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)). Plaintiff has sufficiently pled all of the elements for its breach of contract claim.

---

[2] "A 'contract' is defined as 'a promise or a set of promises for the breach of which the *law* gives a remedy, or the performance of which the *law* in some way recognizes as a duty.'" *King v. United States*, 159 Fed. Cl. 450, 468 (2022) (emphasis in original) (citing Restatement (Second) of Contracts § 1 (1981) (emphasis added)).

>1.    **HNBL has plausibly alleged mutuality of intent to contract and offer
>and acceptance.**

HNBL has pled ample allegations that the parties had a shared intent to contract, and there was indeed an offer and acceptance. The Government makes many of the same arguments as it did in its Motion to Dismiss in *Crestview* in regard to these two elements, and the Court of Federal Claims rejected those arguments, finding that the laboratory in that case, Crestview, plausibly alleged mutuality of intent and offer and acceptance. *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 16-19. The Court should find the same in this case.

Circumstantial and documentary evidence may be used to support an intent to contract by an agency. *See, e.g., Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1366 (Fed. Cir. 2005) ("abundant documentary proof" may establish mutual intent to contract); *Peninsula Grp. Cap. Corp. v. United States*, 93 Fed. Cl. 720, 728 (2010) (mutual intent may be inferred from the conduct of the parties). The Federal Circuit has found that agency correspondence and memoranda may reflect the type of proof necessary to support finding an intent to contract. *Hometown Fin.*, 409 F.3d at 1365. Thus, mutuality of intent to contract can be established by the surrounding factual circumstances.

Here, the UIP Funding Laws and the accompanying terms and conditions for each law, including the Terms and Conditions: Families First Coronavirus Response Act ("T&Cs for FFCRA", Motion Appendix, pp. A63-A74), the Terms and Conditions: Provider Relief Fund & American Rescue Plan Act (June 1, 2021 – December 17, 2021) ("June 2021 T&Cs for ARPA", Motion Appendix, pp. A75-A85), and the Terms and Conditions: Provider Relief Fund & American Rescue Plan Act (December 17, 2021 – end) ("December 2021 T&Cs for ARPA",

Motion Appendix, pp. A86-A97[3]), each contained an explicit clause stating that the Government "*will reimburse*" HNBL "at 100 percent of Medicare rates" for its eligible UIP testing claims. (T&Cs for FFCRA, Motion Appendix, p. A66; June 2021 T&Cs for ARPA, Motion Appendix, p. A78; December 2021 T&Cs for ARPA, Motion Appendix, p. A89 (emphasis added).)

Additionally, the Director of the HRSA Office of Provider Support's Division of Policy and Program Operations, Susan Marsiglia Gray, gave a webinar presentation titled "HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration of the Uninsured" accompanied by presentation materials (the "Webinar PowerPoint," Motion Appendix, pp. A30-A62). Similar to the UIP Terms and Conditions, the Webinar PowerPoint also stated that as "part of enacted [UIP Funding Laws] – the U.S. Department of Health and Human Services (HHS), *will provide* claims reimbursement to health care providers for testing uninsured individuals for COVID-19." (Webinar PowerPoint, Motion Appendix, p. A33 (emphasis added).) Collectively, the UIP Terms and Conditions, further confirmed by the Webinar PowerPoint presentation, are the type of proof (and allegations at the pleadings stage) that support an intent by the Government to contract with participating providers. *See, e.g., Hometown Fin.*, 409 F.3d at 1365.

Specifically, in the UIP Terms and Conditions, the Government promised the UIP participants, including HNBL, that if they met the program eligibility requirements, they would be paid at 100% of Medicare rates for COVID-19 testing services they provided to uninsured individuals for qualifying claims they submitted prior to the March 2022 shut-down of the UIP portal. Indeed, the UIP Terms and Conditions were an unambiguous "offer" by the Government

---

[3] The T&Cs for FFCRA, June 2021 T&Cs for ARPA, and the December 2021 T&Cs for ARPA are collectively hereinafter referred to as the "UIP Terms and Conditions."

to providers as they set out the terms at which providers could participate and get paid – an offer that HNBL accepted by agreeing to the UIP Terms and Conditions during registration into the program, complying with the UIP Terms and Conditions, performing tests during the Pandemic, and submitting each compliant test through the UIP portal. (Plaintiff's Complaint, ¶¶ 14, 26-30.) This was done with the expectation that HNBL would be paid in accordance with the terms laid out in the UIP Terms and Conditions.

Without such promises to pay, HNBL would never have engaged in such risky business, *i.e.*, conduct COVID-19 tests for uninsured individuals, as it undoubtedly would be a money-losing business. While express and implied-in-fact contracts can be held to exist without a contractor's performance of work, generally, performance of work provides strong evidence of the existence of such a contract. Courts generally view contractors as business entities that would not incur costs and perform work without the assurance of compensation. *See Thomson v. United States*, 174 Ct. Cl. 780, 794 (1966). As a result, there is great weight given to the fact that a contractor has taken on costs and performed some or all of the work required under an implied-in-fact contract. *See, e.g., Silverman v. United States*, 230 Ct. Cl. 701, 710 (1982); *OAO Corp. v. United States*, 17 Cl. Ct. 91, 101-103 (1989). Plaintiff incurred, and alleged as such in its Complaint, substantial monetary investments to significantly increase its testing capacity and ultimately provided the support required by the Government to reach its goal of getting communities out of lock down and back into schools and offices. (Plaintiff's Complaint, ¶¶ 5, 27.)

*Portland Mint v. United States*, 102 F.4th 1371 (Fed. Cir. 2024) is also instructive and analogous to the instant case. In *Portland Mint*, the Court determined whether there was an implied contract in a program "where individuals or businesses could submit bent or partial coins to the U.S. Mint in exchange for payment." *Id.* at 1375. The regulation that governed the program stated

22

that the businesses or individuals that participated in the program "may be subject to a certification process," "may be required to provide documentation for how the participant came into custody with the…coins," and also provided that U.S. Mint "would not redeem submitted coins in certain circumstances," which included counterfeit coins. *Id.* at 1376. A business, Portland Mint, participated in the program for years. *Id.* Portland Mint submitted coins, which included coins that had previously been detained by U.S. Mint for suspicion of being counterfeit. *Id.* at 1377. U.S. Mint did not issue payment for the coins, and Portland Mint sued for breach of an implied contract, among other causes of action. *Id*. The court found that an implied contract was created because the "regulation acted as an offer, and if a party submitted qualifying coins to the U.S. Mint, it was an acceptance…" *Id.* at 1379. The court reasoned that the regulation contained language that "'[a]ny submission under this subpart shall be deemed an acceptance of all provisions of this subpart,'…which contemplated that redemption of coins would create a contract." *Id.*

Here, providers needed to attest to the UIP Terms and Conditions to participate in the UIP (Motion Appendix, pp. A18-A19, A37), and the UIP Terms and Conditions set forth the terms and conditions to participate in the program. (Motion Appendix, pp. A63-97.) As the court in *Crestview* stated: "under *Portland Mint*, it is more than plausible to view the UIP T&C as an offer by the United States, and Crestview's attestation to follow the UIP T&C, participating in the COVID-19 UIP, and submission of claims for reimbursement—again, construed in Crestview's favor—as an acceptance, thereby forming an implied-in-fact contract, if not an express contract through the UIP T&C." *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 18.

Plaintiff has unambiguously alleged that there was an offer to HNBL, which it accepted by agreeing to the UIP Terms and Conditions *and* submitting compliant claims through the UIP portal as required. Moreover, the fact that Plaintiff took substantial affirmative steps to perform work is

23

compelling evidence that, at a minimum, an implied-in-fact contract with the Government had been reached. It would defy all logic for Plaintiff to commit such resources if the parties had not had an agreement in place. The Government attempts to characterize the UIP Terms and Conditions as "mere solicitations, invitations, or instructions" that were not offers, citing for example, *Sin Hang Lee v. United States*, 142 Fed. Cl. 722 (2019). (Motion, p. 18.) The UIP Terms and Conditions, however, were not mere solicitations, invitations, or instructions. They were detailed offers to qualified providers setting out the terms of an agreement that HNBL chose to accept and rely upon to its great detriment.

The Government's reliance on *Hang Lee* is misplaced. *Hang Lee* involved an inventor who allegedly developed a molecular test for the accurate diagnosis of Lyme disease and claimed he entered into an implied-in-fact contract with the United States Centers for Disease Control and Prevention (CDC) to endorse the test, and that the CDC breached the contract. *Hang Lee*, 142 Fed. Cl. at 726. Plaintiff alleged that the CDC offered to enter into a contract during a conference on Lyme disease when the Chief of the CDC stated: "So wherever possible we encouraged and required other non-serologic-based tests in addition to clinical presentation so that might have included PCR or culture or both ... And again I'm looking forward to seeing a greater utilization of PCR as a diagnostic tool in the future." *Id.* The court found the Chief's public statement at a conference suggested "no more than a desire, or a general willingness, to see greater utilization of PCR as a diagnostic tool for Lyme disease testing." *Id.* at 731. Unlike the UIP and its detailed terms and conditions, the public statement made in *Hang Lee* that the plaintiff attempted to rely upon as the basis for an agreement did not contain a promise, nor did it make a request of anyone to develop a diagnostic test for Lyme disease. *Id.* As such, the *Hang Lee* court found that plaintiff

could not reasonably rely upon the public statement to show that the CDC extended an offer to enter into an implied-in-fact contract. *Id.*

*Hang Lee* is easily distinguishable from the present matter, and the Court in *Crestview* already found that *Hang Lee* "is wholly inapposite." *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 18. Here, the Government did make a promise. It promised to pay 100% of Medicare rates for COVID-19 testing performed for uninsured patients that met the UIP Terms and Conditions. There was no ambiguity as to what HNBL had to do to get paid under the UIP and the Government promised to pay if the conditions were met. Indeed, the Government set up administrators for processing claims, methods for ensuring UIP Terms and Conditions were met, and contracted with third parties to facilitate payments. (Plaintiff's Complaint, ¶¶ 31-32.) Additionally, as alleged by HNBL in its Complaint, the Government *did make a request* to health care providers to step up and perform the significant work needed to meet its goals to test every person in America, no matter their financial situation. (Plaintiff's Complaint, ¶¶ 2, 3, 5.)

The Government's argument that because HNBL attested to the UIP Terms and Conditions *before* it submitted claims and had to submit *eligible* claims meant that no contract could have been formed is completely unavailing and nonsensical. Every contract requires the parties to perform in stages. At the outset, there are usually terms agreed to *before* any performance, once performance occurs, and it is confirmed the performance conforms with the terms of the agreement, then payment can be rendered. This is the path of a contract and therefore cannot serve as a bar to asserting an express or implied-in-fact contract with the Government pursuant to the UIP Terms and Conditions. Notably, this Court has recognized that terms and conditions set forth by the Government (that prompted action by another party) can serve as the basis for an express or implied contract with the United States. *Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl.

411, 415 (1995) (finding terms and conditions for a grant award issued by the Government could serve as the basis for a contract, which the plaintiff accepted when it commenced work on the grant project). As such, Plaintiff has sufficiently alleged an offer and acceptance of an express or implied contract, and mutuality of intent to contract between the parties.

### 2.   HNBL has plausibly alleged consideration.

HNBL has adequately pled consideration as HNBL suffered a detriment by conducting numerous tests and agreeing to forgo billing the patient; the Government received benefits in that it was able to respond to a national emergency—by ensuring uninsured individuals were receiving vital health care services to prevent the spread of COVID-19—as the Government was unable to provide such services at such a scale without fortifying the existing healthcare system through the assistance of private companies such as HNBL. Indeed, the Court of Federal Claims has already found consideration to be plausibly alleged in similar circumstances in *Crestview* and *Laborant*.

"Consideration is defined as a 'detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor.'" *Woll v. United States*, 45 Fed. Cl. 475, 477 (1999) (quoting *Estate of Bogley v. United States*, 514 F.2d 1027, 1033 (1975) (quoting 1 Williston, Contracts § 102 (1957))); *see also Carter v. United States*, 102 Fed. Cl. 61, 66 (2011) (stating "[c]onsideration is generally a bargained for exchange consisting of an act, forbearance, or return promise") (citing Restatement (Second) Contracts §§ 71, 72 (1981)).

The Government cites to *City of El Centro v. U.S.*, 922 F.2d 816 (Fed. Cir. 1990) in support of its position that no consideration existed for the contract alleged in the instant matter. *El Centro*, however, is distinguishable, and *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 20-21 and *Laborant, LLC*, 180 Fed. Cl. at 87 have already rejected its applicability on similar facts. *El Centro* involved aliens injured in a car chase with the Border Patrol. After a fiery accident, the surviving

26

aliens were transported to and treated at a nearby hospital. The question before the court was whether the U.S. was obligated to pay the significant hospital costs for treating the aliens. Ultimately, the court held there was no consideration creating an implied-in-fact contract because the aliens were never in the custody of the U.S. and therefore the U.S. government never assumed any responsibility to care for the injured aliens. *El Centro,* 922 F.2d at 823. Here, the Government very clearly and publicly recognized a national emergency and decided it would assume the responsibility (and take a leading role) to get the Pandemic under control, including through the UIP, which "played an important role in the federal government's response to the COVID-19 pandemic. The aim of the UIP was to reduce community spread of COVID-19 and ensure access to COVID-19 testing and treatment, and later vaccines." (*See* Plaintiff's Complaint, ¶ 37, fn. 4; OIG Report No. A-02-21-01013 (July 2023), p. 21 available at https://oig.hhs.gov/documents/audit/6536/A-02-21-01013-Complete%20Report.pdf.) HRSA further recognized that the UIP was "administratively designed to be most responsive to the pandemic's unprecedented impact and scale while *expeditiously reimbursing providers* serving uninsured patients." *Id.* (Emphasis added).

In short, with the UIP, the Government recognized it could not adequately respond to the COVID-19 pandemic on its own and that it needed the help of providers to conduct widespread testing of all individuals regardless of financial status. In exchange, the Government promised rapid disbursement of funds for the COVID-19 response through the UIP to those "heroes" that stepped up, heroes like HNBL. Thus, unlike in *El Centro*, the Government assumed the significant responsibility of responding to a national emergency, enlisted the help of the private sector in its response, including by leveraging provider networks and infrastructure to fulfill its duties and promises to the American people and promising to pay providers who conducted uninsured testing

27

through the UIP. By doing so, the Government was able to respond to the Pandemic's "unprecedented impact and scale, while expeditiously reimbursing providers serving uninsured patients." *Id.* This was a significant undertaking by HNBL and the fact that the Government did not have to test everyone through its own resources – and instead could leverage the private sector infrastructure and resources – provided a substantial *direct benefit* to the Government.

As the Court in *Crestview Clinical Laboratory*, *LLC*, 181 Fed. Cl. at 21 explained:

"Unlike the agency in *El Centro*, HHS and HRSA were not only authorized but *commanded* to use the appropriated funds to reimburse healthcare providers like Crestview for their COVID-19 testing and other related services. More importantly…the consideration here is not each individual test but Crestview's participation in the COVID-19 UIP and ongoing compliance with the UIP T&C. *El Centro* is inapplicable where Crestview has identified return promises beyond the authorizing statute. *Accord Laborant*, 180 Fed. Cl. at 87 (finding *El Centro* "inapposite" when rejecting the United States' contention that HHS and HRSA received no benefit from the COVID-19 UIP.)" (Emphasis in original.)

The Court in *Laborant*, 180 Fed. Cl. at 86, additionally found that the allegations supported consideration on another ground, which is also applicable here:

"Laborant's allegations also suffice to support a claim that the government bargained for a forbearance—i.e., that Laborant would not exercise its otherwise existing right to charge or balance bill the uninsured individuals to whom it provided the testing services. See id. ¶¶ 8, 43, 45; see also Def.'s App. at A66, A78, A90 (provisions of the Terms and Conditions). As noted above, a bargained-for forbearance is as much consideration as a bargained-for action. See Restatement § 71(3)."

As is also the case in the instant matter, HNBL agreed that it would not exercise its right to charge or balance bill the uninsured individuals for whom it provided testing services. (Plaintiff's Complaint, ¶ 14; Motion Appendix, pp. A66, A78, A90.) HNBL agreed to forego a legal right (billing the patient) as the price of participating. That forbearance, bargained for by the Government, is textbook consideration regardless of any other argument and is an additional ground for finding consideration.

In its Motion, the Government additionally argues that even if the Government received a benefit from HNBL's services, it would not create an implied-in-fact contract to pay for the services. (Motion, p. 21.) In *Algonac Manufacturing Company v. United States*, 192 Ct. Cl. 649 (1970), a contractor brought a claim against the U.S. government seeking reimbursement for storage of a large unused armor plate owned by the U.S. government. The contractor, at the termination of a contract that involved the use of the plate, requested that the government remove the plate. *Id.* at 669-72. The government failed to do so and, after ten years passed, notified the contractor that the government was abandoning ownership interest in the plate. *Id.* at 670.

Under the terms of the preexisting written contract, the contractor had duties to maintain, protect, repair, and preserve the armor plate. *Id.* at 675-76. The court determined that because of those duties, the contractor reasonably concluded that it was obligated to continue to care for, preserve, and store such property even after the contract expired. *Id.* The court further determined that it was reasonable for the contractor to conclude that it would be compensated for such storage by the government after giving the government notice of the fact that it (the contractor) was storing the plate. *Id.* at 676-77.

The court did not specifically state that the government had benefited from the contractor's storage. A benefit was clear, however, from the court's finding that the contractor had "stored and cared for the [government's] property for 10 years." *Id.* at 677. The court determined that the government's conduct had constituted assent to an implied-in-fact contract for the storage of the plate. *Id.* Similarly, here, the Government implored providers to step up and help the Government meet its goals by ensuring everyone, regardless of their economic situation, would be tested for COVID-19. The Government induced participation in the UIP with promises of payment should

29

the terms of the program be met. The Government here accepted the benefit of HNBL's work and knew, or should have known, that HNBL expected compensation.

As such, at a minimum, an implied-in-fact contract exists between the parties as pled in Plaintiff's Complaint. The Government's acceptance of the benefits of HNBL's work is evidence of such a contract. The Government knew HNBL was not gratuitously rendering services to the Government and that there was an expectation, if it submitted eligible claims, it would be paid for testing for uninsured individuals pursuant to the UIP. Accordingly, Plaintiff has adequately pled consideration as the Government received a direct benefit by avoiding necessary expenditures needed to sustain promised COVID-19 testing for every individual, including uninsured individuals.

### 3.   HNBL has plausibly alleged a breach.

The Government argues that even if the terms and conditions constituted a contract, HNBL fails to plausibly allege that HRSA breached the contract. To the contrary, HNBL's Complaint contains plausible allegations surrounding the breach. The Complaint alleges that "HRSA breached the Contract by failing and refusing to pay HNBL at least $8.8 million in UIP obligated payments due and owing to it for testing services rendered to the COVID-19 UIP". (Plaintiff's Complaint, ¶ 53.) The Complaint also alleges "As a result of the Agency's material breach of the Contract including, its failure to timely pay HNBL the amounts due and owing to it, HNBL incurred additional consequential damages." (Plaintiff's Complaint, ¶ 54.) The court in *Crestview* found similar allegations to be sufficient, and stated that "[b]ecause Crestview has sufficiently alleged that HRSA breached the UIP T&C by refusing to promptly process and reimburse Crestview's claims, thus incurring additional damages…whether HRSA was justified in its actions is a disputed fact that precludes resolution of this question at the motion-to-dismiss stage."

*Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 15, fn.11. Accordingly, at the pleadings stage, HNBL's breach allegations are sufficient.

Moreover, the court in *Crestview* stated the Government's arguments as to the lack of a breach consisted "of mostly conjecture regarding disputed timing and contain[ed] almost no citation to authority." *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 15, fn.11. The Government does the same again here.

The Government also asserts in its Motion that no breach can exist in this case because HNBL's claims were not fully adjudicated before the Fiscal Responsibility Act of 2023 ("FRA") was enacted. However, as alleged in its Complaint, HNBL "believes that HRSA's contractors processed the claims through the adjudication process but were instructed by HRSA to withhold the payments due to HNBL well before the FRA was enacted." (Plaintiff's Complaint, ¶ 16.) Further, the FRA rescinded *unobligated* UIP funds, which has no bearing on the adjudicated payments due and owing to HNBL because those are *obligated* funds. (Plaintiff's Complaint, ¶ 21.) The FRA's rescission of unobligated funds does not abrogate the contractual obligations to pay millions of dollars to HNBL for the testing services it rendered and billed, which were accepted prior to the UIP claims cut-off date of March 22, 2022. (Plaintiff's Complaint, ¶ 62.) As such, HNBL has plausibly alleged breach of contract.

### 4.    HNBL has sufficiently alleged authority to contract.

HNBL has more than sufficiently alleged the Government's authority to enter into a contract with it by referencing HHS officials and incorporating UIP Terms and Conditions specifically stating the Secretary of HHS would provide reimbursement for providers submitting qualifying claims. (Plaintiff's Complaint, ¶¶ 11, 12.) Contrary to the Government's assertion that HNBL did not identify *anyone* with actual authority (Motion, p. 21), Plaintiff's Complaint

31

expressly alleges that "[t]he federal government repeatedly acknowledged that the contract with providers who furnished testing services was authorized and controlled by the Secretary of HHS (Xavier Becerra) such that he had actual authority to bind the United States." (Plaintiff's Complaint, ¶ 19.)  Moreover, HNBL addresses the UIP Funding Laws that provide that the Secretary established the COVID-19 UIP and, in accordance with the contract, was the authority tasked with reimbursing providers at 100 percent of Medicare rates." (Plaintiff's Complaint, ¶¶ 10, 11, 19 and 50.)

Notably, "a general allegation of authorization, liberally construed from the facts alleged in a complaint, is sufficient to withstand a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de CV. v. United States*, 79 Fed. Cl. 235, 241 (2007) (citing *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1380 (Fed. Cir. 2001)). Further, whether the government representative in question had authority to bind the government is a question of fact which cannot be resolved in the Government's favor at the pleading stage. *See Leonardo v. United States*, 60 Fed. Cl. 126, 128 (2004) (noting that the court ordered "further discovery and briefing" as to the issue of "whether the government representative who entered or ratified the alleged contract had the authority to bind the United States"); *Hanlin*, 316 F.3d at 1328 (stating analysis of express or implied in fact turns on "nature of the evidence").

The Courts in both the *Crestview* and *Laborant* cases clearly found that the Plaintiffs' allegations met the pleading standard, that they were not required to identify and plead a particular person who approved the contractual arrangement, (citing *Sommers Oil*, 241 F. 3d at 1378) and plausibly alleged that government representative with legal authority to bind the HRSA UIP was involved in the claim submission process. *Crestview Clinical Laboratory, LLC,* 181 Fed. Cl. at 20-21; *Laborant, LLC,* 180 Fed. Cl. at 23.

Finally, the Government attempts to support its argument by asserting unsupported facts regarding the claims processing and payment process and its potential application to the official who had authority to pay claims once the "claims were placed on hold" suggesting this would somehow bar the HHS Secretary's authority to contract and pay providers. In any event, the parties' disputes on the claims process cannot be resolved on the pleadings alone. *Leonardo v. United States*, 60 Fed. Cl. 126, 128 (2004). HNBL has alleged sufficient facts in the Complaint to withstand the Government's motion to dismiss at the pleading stage by establishing that HHS authorities had authority to bind the Government to a contract to pay providers for COVID-19 UIP testing services.

**E.      HNBL has Pled the Essential Elements of its Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.**

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement § 205). "The covenant of good faith and fair dealing…imposes obligations on both contracting parties that include the duty not to interfere with the other party's *performance* and not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract*." *Id.* at 991 (emphasis in original) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (emphasis added)). "To state a claim for breach of the implied covenant of good faith and fair dealing," "a party generally must allege some kind of 'subterfuge[]' or 'evasion[],' such as 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance'." *Dotcom Associates I,*

*LLC v. United States*, 112 Fed. Cl. 594, 596 (quoting Restatement (Second) of Contracts § 205 (1981)).

HNBL alleges that the Government breached the implied covenant because it intentionally delayed the Assessment to avoid paying HNBL for services rendered and claims submitted before the Claims Cut-Off Date, implemented a legally unsupported hold on the UIP obligated payments due to HNBL while it conducted the Assessment, and improperly relied on the FRA's rescission of unobligated funds when the funds owed to HNBL were obligated. (Plaintiff's Complaint, ¶¶ 69-71; *see also* ¶¶ 40-44.) As the court in *Crestview* found with regard to similar arguments, "[a]t the motion-to-dismiss stage, these allegations are more than sufficient to state a claim for breach of the implied covenant of good faith and fair dealing." *Crestview Clinical Laboratory, LLC*, 181 Fed. Cl. at 24.

The Government's Motion again asserts similar arguments that the court in *Crestview* rejected. The *Crestview* Court stated that the Government's arguments regarding dismissal of the breach of implied covenant of good faith and fair dealing claim were "premature and unpersuasive without the benefit of discovery." *Id.* at 24. Thus, HNBL has plausibly alleged that the Government breached the implied covenant of good faith and fair dealing.

The Government also argues in its Motion that HNBL's breach of the implied covenant of good faith and fair dealing count is not adequately pled because there is no contract. However, as addressed in Section IV.D. above, HNBL has plausibly alleged a contract.

F.      **The Fiscal Responsibility Act of 2023 Does Not Extinguish HNBL's Claims.**

The Government's passing of the FRA, rescinding COVID-19 remaining *unobligated* funds, is not relevant when the amounts due and owing to HNBL are obligated and have not been repealed. Thus, the Government's allegations that the FRA "extinguished any further liability to

[HNBL]" are without merit. (Motion, p. 38.) In any event, the unpaid claims can and should be paid, if necessary, from the Judgment Fund.

The FRA only rescinded **unobligated** appropriations that were allocated to the HRSA UIP. HNBL has repeatedly alleged that the $8.8 million in unpaid claims constitutes **obligated** amounts due and owing to it for the COVID-19 UIP testing services. (Plaintiff's Complaint, ¶¶ 13, 16, 34, 53, 55, 62, 63.) As alleged in the Complaint and confirmed by the Crestview and *Laborant* decisions, if HNBL had a contractual right to reimbursement at the time it submitted its claims, the funds to make reimbursement payments to HNBL were obligated and thus, not subject to rescission. *Laborant, LLC*, 180 Fed. Cl. at 13.

HNBL alleges that it entered into a contract with HRSA for COVID-19 UIP testing services, furnished the testing services, submitted the claims before the UIP Claims Cut-Off Date and HRSA acknowledged acceptance of such claims. (Plaintiff's Complaint, ¶¶ 14, 15, 33, 34.) Furthermore, the UIP Terms and Conditions support that the submission of the claims is the only act necessary to obligate the reimbursement providing "[t]he Secretary **will reimburse** the Recipient at 100 percent of Medicare rates . . . for items and services . . . provided to Uninsured Individuals for which Recipient submits claims to the Uninsured Program Fund unless otherwise noted." (Motion Appendix, pp. A66, A78, A89 (emphasis added).) *See also*, *Crestview Clinical Laboratory*, 181 Fed. Cl. at 22.

As in the *Crestview* case, the Government again relies on *Greenlee County, Ariz. v. United States*, 487 F.3d 871 (Fed. Cir. 2007) for its assertions that "in the contract context, the 'subject to availability of appropriations' language means that it is not contractually bound except to the extent that appropriations are available." (Motion, p. 30.) In the *Crestview* case, the Court found the Government's reliance on the *Greenlee* case unpersuasive, pointing out that it did not involve

35

a contract and that the Federal Circuit in *Greenlee* confirmed that because it was a benefits program providing more room to find the government's liability limited to appropriated funds. *Crestview Clinical Laboratory,* 181 Fed. Cl. at 23.

Significantly, HNBL has also properly alleged a claim for the breach of implied covenant of good faith and fair dealing. HNBL alleges that HRSA intentionally delayed reviewing and providing the Assessment findings to avoid paying its claims. (Plaintiff's Complaint, ¶¶ 44, 63.) HNBL alleges that HRSA had the Assessment findings more than six months prior to the FRA but never provided the findings and never communicated to HNBL that its UIP claims would not be paid based on the FRA until October 2023. (Plaintiff's Complaint, ¶ 43.) As the court pointed out in the *Crestview Clinical Laboratory,* 181 Fed. Cl. at 23, the subsequent rescission of funding through the FRA may support a claim for breach of the implied covenant claim of good faith and fair dealing, noting the Federal Circuit Court's explanation in the *Precision Pine* case:

> Cases in which the government has been found to violate the implied duty of good faith and fair dealing typically involve some variation on the old bait-and-switch. First, the government enters into a contract that awards a significant benefit in exchange for consideration. Then, the government eliminates or rescinds that contractual provision or benefit through a subsequent action directed at the existing contract. The government may be liable for damages when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract.

*Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010) (citations omitted).

In sum, the FRA's rescission of unobligated funds has no bearing on the obligated amounts due and owing to HNBL, and, as in *Crestview* and *Laborant*, that rescission independently supports HNBL's claim for breach of the implied covenant of good faith and fair dealing. The Court should reject the Government's FRA-based defense and deny the Motion as to Counts I through III.

36

## V.    CONCLUSION

For the reasons submitted herein, the Court should deny the Government's Motion as to Counts I through III.

DATED: August 4, 2026                    Respectfully submitted,


_/s/ Elaine F. Harwell_
Elaine F. Harwell
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Email: elaine.harwell@procopio.com
Counsel for Plaintiff

OF COUNSEL:
Diane M. Racicot
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Email: diane.racicot@procopio.com