IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEATLHNBEAUTY.LIFE INC.,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | No. 26-601<br>(Judge Tapp) |

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

OF COUNSEL

ERIN PODOLNY
LU HAN
Public Health Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

VINCENT D. PHILLIPS, JR.
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 305-4591
Vincent.Phillips2@usdoj.gov

August 18, 2026

*Attorneys for the United States*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. The Documents Included In The Appendix To Our Motion Are Properly Considered On A Motion To Dismiss ........ 1

II. HNBL's Response Confirms That Its Case Rises And Falls As A Contract Claim ........ 2

III. HNBL Fails To Demonstrate That It Has Plausibly Alleged The Formation And Breach Of A Contract Obligating HRSA To Reimburse Any Additional Claims ........ 4

A. The UIP Terms And Conditions Do Not Obligate HRSA To Pay HNBLs Claims ........ 6

B. HNBL Fails To Demonstrate That It Plausibly Pled Each Element Necessary To Contract Formation ........ 8

1. HNBL Fails To Rebut That It Did Not Plausibly Allege An Unambiguous Offer Or Acceptance By HRSA To Pay HNBL's Claims ........ 8

2. HNBL Fails To Rebut That It Did Not Plausibly Allege Consideration For HRSA To Pay HNBL's Claims ........ 11

3. HNBL Fails To Rebut That It Did Not Plausibly Allege That Anyone With Actual Authority Bound HRSA To Pay HNBL's Claims ........ 14

4. HNBL Fails To Rebut That It Did Not Plausibly Allege That HRSA Intended To Be Contractually Bound To Pay HNBL's Claims ........ 17

IV. HNBL Cannot Sidestep The Consequences Of The Fiscal Responsibility Act ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Algonac Mfg. Co. v. United States*,
428 F.2d 1241 (Ct. Cl. 1970) .......... 13, 14

*Anderson v. United States*,
344 F.3d 1343 (Fed. Cir. 2003) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 16

*Chattler v. United States*,
632 F.3d 1324 (Fed. Cir. 2011) .......... 17

*City of Cincinnati v. United States*,
153 F.3d 1375 (Fed. Cir. 1998) .......... 14

*Crestview Clinical Laboratory, LLC v. United States*,
181 Fed. Cl. 1 (2026) .......... 3, 4, 11, 12, 15, 20

*Cutler-Hammer, Inc. v. United States*,
441 F.2d 1179 (Ct. Cl. 1971) .......... 7

*Dimare Fresh, Inc. v. United States*,
808 F.3d 1301 (Fed. Cir. 2015) .......... 1

*D & N Bank v. United States*,
331 F.3d 1374 (Fed. Cir. 2003) .......... 17

*El Centro v. United States*,
922 F.2d 816 (Fed. Cir. 1990) .......... 12, 13

*Estate of Bogley v. United States*,
514 F.2d 1027 (Ct. Cl. 1975) .......... 9, 12

*Hercules Inc. v. United States*,
516 U.S. 417 (1996) .......... 5

*H. Landau & Co. v. United States*,
886 F.2d 322 (Fed. Cir. 1989) .......... 14

*Laborant, LLC v. United States*,
180 Fed. Cl. 76 (2026) .......... 4, 6, 13, 15, 20

*Linear Tech. Corp. v. Micrel, Inc.*,
275 F.3d 1040 (Fed. Cir. 2001) .......... 13

*Melwood Horticultural Training Ctr., Inc. v. United States*,
151 Fed. Cl. 297 (2020) ....................................................................................................7

*Mobil Oil Corp. v. United States*,
991 F.2d 811 (Fed. Cir. 1993)........................................................................................3, 4

*OAO Corp. v. United States*,
17 Cl. Ct. 91 (1989) ........................................................................................................10

*Precision Pine & Timber, Inc. v. United States*,
596 F.3d 817 (Fed Cir. 2010)............................................................................................2

*Portland Mint v. United States*,
102 F.4th 1371 (Fed. Cir. 2024) ...............................................................................10, 11

*Robinson v. United States*,
305 F.3d 1330 (Fed. Cir. 2002)......................................................................................3, 4

*Rocky Mt. Helium, LLC v. United States*,
841 F.3d 1320 (Fed. Cir. 2016)..........................................................................................2

*Shell Oil Co. v. United States*,
751 F.3d 1282 (Fed. Cir. 2014)..........................................................................................5

*Silverman v. United States*,
679 F.2d 865 (Ct. Cl. 1982) ............................................................................................10

*Sin Hang Lee v. United States*,
142 Fed. Cl. 722 (2019) ...................................................................................11, 16, 17

*Sin Hang Lee v. United States*,
819 F. App'x 908 (Fed. Cir. 2020) ..................................................................................16

*Sommers Oil Co. v. United States*,
241 F.3d 1375 (Fed. Cir. 2001)........................................................................................15

*Thermalon Indus. v. United States*,
34 Fed. Cl. 411 (1995) ....................................................................................................18

*Thomson v. United States*,
357 F.2d 683 (Ct. Cl. 1966) ............................................................................................10

*Trauma Serv. Grp. v. United States*,
104 F.3d 1321 (Fed. Cir. 1997)...............................................................................8, 14, 16

*Woll v. United States*,
45 Fed. Cl. 475 (1999) ....................................................................................................12

*XP Vehicles, Inc. v. United States*,
121 Fed. Cl. 770 (2015) ....................18

RULES AND REGULATIONS

RCFC 7.2 ....................1

31 U.S.C. § 1341 ....................5, 14

OTHER AUTHORITIES

1 Williston, Contracts § 102 (1957) ....................12

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1357 (3d ed. 2004) ....................1, 2

Restatement (Second) of Contracts § 24 ....................20

Pursuant to Rule 7.2(b)(2) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this reply in support of our motion to dismiss and in response to the opposition of plaintiff HeathnBeauty.Life Inc (HNBL) (ECF 11).

In our motion, we established that Counts I—III of plaintiff's complaint (asserting breach of an express contract, an implied contract, and the duty of good faith) must be dismissed because no contract exists entitling HNBL to reimbursement simply because it submitted claims to HRSA. We also showed that Count IV must be dismissed because the statutory basis for the Uninsured Program did not create any unconditional guarantee of reimbursement, and HNBL concedes this point. Further, once Congress rescinded unobligated funds through the FRA, any claims for reimbursement that HNBL could assert were extinguished.

HNBL has failed to rebut our demonstrations, and its complaint should be dismissed.

## ARGUMENT

### I. The Documents Included In The Appendix To Our Motion Are Properly Considered On A Motion To Dismiss

HNBL first argues that the Court may not consider the standard operating procedures of the Uninsured Program because "HNBL has not mentioned this document in the Complaint and it does not appear to have been adopted or published on a public government website." Resp. 17; *see* A100-103. HNBL is incorrect.

As we demonstrated in our motion, MTD (ECF 10) in resolving motions to dismiss for failure to state a claim, "[a]lthough [the Court] primarily consider[s] the allegations in a complaint," it is "not limited to the four corners of the complaint" and "may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (last alteration in original, quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 1357 (3d ed. 2004)); *see Rocky Mt. Helium, LLC v. United States*, 841 F.3d 1320, 1325–26 (Fed. Cir. 2016) ("The Supreme Court has ruled that a court 'must consider the complaint in its entirety, … in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'").

HNBL's complaint asserts that HRSA "paused" continued processing of HNBL's claims and it further discusses communications surrounding that "pause." *See* Compl. ¶¶ 40-44. Indeed, HNBL specifically pleads this "pause" as an allegation of breach. Compl. ¶¶ 45, 56, 63, 65, 71. The standard operating procedures that inform the challenged processing pause thus lie at the heart of HNBL's allegations, and it strains credulity to contend that the standard operating procedures for that program are anything other than "incorporated by reference or integral to the claim." The Court is therefore free to consider these procedures in addressing the United States motion to dismiss.

## II. HNBL's Response Confirms That Its Case Rises And Falls As A Contract Claim

Although HNBL's complaint purports to plead four different causes of action, its response makes clear that this case rises and falls on the existence of an express or implied contract relationship. Thus, the Court can dismiss Counts III and IV.

First, we explained in our motion that HNBL fails to state a claim in Count III—its standalone breach of the good faith and fair dealing allegation. *See* MTD Section III.B. Indeed, the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817, 831 (Fed. Cir. 2010).

HNBL argues that the Government breached the implied duty by "intentionally delay[ing] the Assessment," "implement[ing] a legally unsupported hold," and "improperly rely[ing] on the FRA's rescission of unobligated funds when the funds owed to HNBL were

[allegedly] obligated." Resp. at 34. But as we explained in our motion, HNBL could not have any reasonable expectation of receiving reimbursement on any given claim merely because it submitted the claim. MTD at 28. Moreover, HRSA had the right to conduct an assessment, and it followed its standard operating procedures in doing so. *Id.*

Importantly, HNBL acknowledges that it had no objective expectation that it would receive reimbursement simply because it submitted claims. Compl. ¶¶ 20, 42 (citing HRSA letter: "after the pending claims assessment is completed, any claims that your organization successfully submitted prior to [April 6, 2022] and were placed on hold may be paid subject to the availability of funding."). HNBL has offered nothing beyond its unsubstantiated conclusion that the Government "intentionally delayed the Assessment to avoid paying HNBL," Resp. at 34, but this conclusion is refuted by HNBL's own factual allegations about the adjudication process.

Further, HNBL's reliance on persuasive authority from this Court does not remedy the flaw in its claim. *See* Resp. at 34 (citing *Crestview Clinical Laboratory, LLC v. United States*, 181 Fed. Cl. 1, 24 (2026)). While the United States acknowledges that this case addressed similar claims based on the same Uninsured Program, that persuasive authority is not binding and this Court need only afford it weight if its reasoning is sound, but the reasoning is not sound for the reasons we explain below. *See Mobil Oil Corp. v. United States*, 991 F.2d 811, *3 (Fed. Cir. 1993) (unpublished); *see also Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002). Regardless of whether the Court in *Crestview* afforded that plaintiff a beneficial inference concerning its "intentional delay" allegations, this Court need not do the same. That is because the inference that HNBL asks this Court to draw from the Government's letter saying an assessment will be undertaken is that it was completed and all HNBL's claims were approved. That inference is not supported. *See Crestview*, 181 Fed. Cl. at 24; Compl. ¶¶ 40-44.

Second, we also explained in our motion that the appropriations laws enacted by Congress—that were the source of the funding HRSA used to make reimbursements under the UIP—are not *themselves* money-mandating and therefore cannot be an independent basis for this Court's jurisdiction. *See* MTD Section II. HNBL concedes this point, *see* Resp. 17-18. Because HNBL does not have a claim under a standalone money-mandating source of law, a point it concedes, Count IV should be dismissed.

III. HNBL Fails To Demonstrate That It Has Plausibly Alleged The Formation And Breach Of A Contract Obligating HRSA To Reimburse Any Additional Claims

HNBL contends the United States arguments should be foreclosed by the decisions in *Crestview Clinical Laboratory, LLC v. United States*, 181 Fed. Cl. 1 (2026), and *Laborant, LLC v. United States*, 180 Fed. Cl. 76 (2026). *See* Resp. 8. Again, although the United States acknowledges that those cases address claims based on the same Uninsured Program that is at issue in this case, that persuasive authority is not binding and this Court need only afford it weight in accordance with the soundness of its reasoning. *See Mobil Oil Corp.*, 991 F.2d at *3 (unpublished); *see also Robinson*, 305 F.3d at 1333.

Those decisions are incorrect in that they hold that that the mere act of a plaintiff submitting a claim for reimbursement in the Uninsured Program establishes a contractual obligation on the United States to pay that claim. HNBL cites these cases in support of its allegations about offer and acceptance because those courts held that the "Program materials plausibly reflect a commitment (subject to the availability of funding) to pay Program enrollees that performed covered services, complied with its Terms and Conditions, and filed timely claims for reimbursement." Resp. 20-25; *see Laborant*, 180 Fed. Cl. at 84-85; *see also Crestview,* 181 Fed. Cl. at 16-17 (relying on *Laborant)*.

A holding that a contractual obligation is established by the mere act of submitting a

claim in the Uninsured Program, as opposed to HRSA thereafter evaluating and then approving the claim, is incorrect because that holding would conflict with the Anti-Deficiency Act, 31 U.S.C. § 1341. *See Hercules Inc. v. United States,* 516 U.S. 417, 426-427 (1996) (explaining that circumstances defeated idea that Government employee created open-ended, implied-in-fact indemnity agreement because Federal employees are barred from entering into contract for future payment of money in advance of, or in excess of, an existing appropriation). Indeed, the Anti-Deficiency Act prohibits Government employees from making open-ended indemnifications. *See Shell Oil Co. v. United States,* 751 F.3d 1282, 1300 (Fed. Cir. 2014). Specifically, the Government "may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).

But by allowing the mere act of submitting a claim in the Uninsured Program to establish a contractual obligation, the Court would be holding that the reimbursement program is effectively an open-ended liability for HRSA, transforming the program into one over which HRSA has no control over the amounts of money to be paid. Such a holding would conflict with the Anti-Deficiency Act because it would remove the Government's ability to control the amount of the obligations that the United States incurs. And if mere submission of a claim created an obligation, HRSA would therefore be obligated to pay fraudulent claims as well, which is nonsensical. This incorrect conclusion that the submission of a claim constituted the acceptance of a contract is further dispelled because HRSA had no control over who submitted claims nor could it control the amount that was sought for reimbursement. The only control HRSA had over the process was to *consider* submitted claims and thereafter approve eligible claims for reimbursement. This means that the only logical point at which a contractual obligation could

attach was after HRSA determined that it would reimburse a claim. To hold that the mere submission of a reimbursement claim creates an contractual obligation effectively holds that the United States is precluded from complying with the Anti-Deficiency Act in managing the reimbursement process in the Uninsured Program.

The persuasive authority HNBL cites cannot, and should not, be interpreted as reaching such a conclusion. Indeed, the court in *Laborant* qualified its holding by stating that any such obligation that arose as the result of the submission of a claim was "subject to the availability of funding." 180 Fed. Cl. at 84. But the only way HRSA could determine whether funding was available to cover claims submitted was through the approval process, thus the express reference to the "subject to the availability of funding" language counsels against reading these decisions as holding that the mere act of submitting a claim for reimbursement established a contractual obligation on the United States. Accordingly, HNBL cannot plausibly allege any breach claim because it has not plausibly alleged that any claim it submitted was authorized for reimbursement by HRSA and thus has failed to show that any contractual relationship was established. Resp. at 30-31. HNBL's claims fail as a matter of law and should be dismissed, as discussed below.

A. <u>The UIP Terms And Conditions Do Not Obligate HRSA To Pay HNBL's Claims</u>

HNBL pins its case on the following bullet point in the UIP terms and conditions:

> The Secretary will reimburse the Recipient generally at 100 percent of Medicare rates (including any amounts that would have been due to the provider as patient cost sharing) for the items and services that Respondent provided to Uninsured Individuals for which the Recipient submits claims to the Uninsured Program Fund unless otherwise noted. If there is no Medicare standard rate, a calculated average rate will be used. Exclusions from coverage and alternatives to where Medicare rates do not apply are outlined in the program details.

A89; *see* Resp. 20-21. Specifically, HNBL focuses on the first six words—"the Secretary will reimburse the Recipient"—but ignores the context in which those words appear. Contrary to

HNBL's arguments, this bullet point does not obligate HRSA to pay any given submitted claim and therefore is insufficient for HNBL to state a plausible claim for relief in this case.

This reference to the submission of claims further necessarily implicates HRSA's adjudication and approval process. That adjudication and approval process—which HNBL concedes in its complaint at ¶ 20, but entirely ignores in its response—both disposes of the bulk of HNBL's claims regardless of whether a contract could be formed and forestalls contract formation. As we explained in our motion, HNBL pled no facts, much less facts that would plausibly suggest, that most of its claims were ever adjudicated or approved by HRSA. *See* MTD 17-27. Its response does not remedy this failing; indeed, HNBL does not discuss the adjudication or approval of its claims at all.

Moreover, as our motion further explained, "[p]roviding that the application be subject to such approval is alone sufficient to negate existence of a contract until the approval is granted." MTD 24-25 (citing *Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179, 1182 (Ct. Cl. 1971)). HNBL again ignores this binding, and dispositive, precedent entirely, conceding its applicability. *See Melwood Horticultural Training Ctr., Inc. v. United States*, 151 Fed. Cl. 297, 309–10 (2020).

But most fundamentally, this bullet point in the UIP terms and conditions only fixes HRSA's commitment to the *rate* of reimbursement, not the *fact* of reimbursement. That is, there is no dispute that *if* a claim is reimbursed, it "will" be paid "generally at 100 percent of Medicare rates," or if "there is no Medicare standard rate, a calculated average rate will be used," subject to "[e]xclusions from coverage and alternatives to where Medicare rates do not apply." A89. But the rate of reimbursement is not what HNBL's suit challenges. Instead, HNBL's suit is predicated on an earlier threshold question—did HRSA breach a contractual obligation to reimburse claims. The UIP terms and conditions do not address that threshold question; they do

not obligate HRSA to reimburse any given claim, much less HNBL's specific claims.

As such, HNBL's complaint does not state a claim for breach of that provision of the terms and conditions (regardless of whether they can constitute a valid contract). *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("[A] breach of contract is a failure to perform a contractual duty when it is due."). And this language in the terms and conditions on which HNBL so heavily relies cannot help it avoid dismissal.

B. HNBL Fails To Demonstrate That It Plausibly Pled Each Element Necessary To Contract Formation

As we explained in our motion, to survive dismissal, HNBL must plead facts that would plausibly suggest the formation of a contract obligating HRSA to pay HNBL's claims and breach of a duty imposed by a validly formed contract. *See* MTD at Section III. HNBL does not dispute the elements of contract formation that it must plausibly plead "[t]o sustain its claim" or that failure to meet any one of those elements is sufficient to compel dismissal. Resp. 18-19. Our motion demonstrated that HNBL has failed to plausibly allege any of the required elements, and HNBL's response does not overcome the insufficiencies we identified.

1. HNBL Fails To Rebut That It Did Not Plausibly Allege An Unambiguous Offer Or Acceptance By HRSA To Pay HNBL's Claims

HNBL does not dispute that contract formation must begin with an unambiguous offer and acceptance. It argues that in this case, the UIP terms and conditions constitute the offer, and HNBL's agreement to those terms and conditions, compliance with the terms and conditions, performance of the COVID-19 tests, and submission of claims, together, constitute acceptance of that offer. Resp. 20-22. That argument is logically unsound.

Contrary to the order in which HNBL lists its "acceptance" sequence, the performance of the tests must necessarily pre-date even the receipt of the terms and conditions by HNBL. There is no dispute that healthcare providers could only ever submit claims for *reimbursement after* the

testing was performed; and the terms and conditions were provided and attested to at step 2 of the *claim* submission process—that is, after the testing was performed. *See* MTD 3-6. The resulting problem for HNBL is not that "[e]very contract requires the parties to perform in stages[,]" Resp. 25, but rather that acceptance, by definition, cannot pre-date an offer. "Obviously, if there is no offer, there is nothing to accept." *Estate of Bogley v. United States*, 514 F.2d 1027, 1036 (Ct. Cl. 1975).

Thus, contrary to HNBL's assertion, because the "performance of work" had to predate the formation of any possible relationship with HRSA, it cannot constitute "evidence of the existence of . . . a contract." Resp. 22. Put simply, performance cannot equal acceptance here. Indeed, HRSA had no input into who was being tested, by which providers, how many tests were performed, etc. Claims that were submitted were not automatically approved for reimbursement, and healthcare providers were not required to submit any claims, nor, crucially, were healthcare providers *required* to provide *any* testing to anyone in the first place. To be sure, the possibility of reimbursement through the UIP was meant to lower the barriers for uninsured individuals to receive testing, but if HNBL thought the risks of not being reimbursed too high, Resp. 22, it was free to put its efforts toward insured patients or those it would charge directly instead.

Moreover, none of the actions identified by HNBL as "offer" or "acceptance" were sufficient to "conclude" the bargain because after claim submission there remains an adjudication and approval process, which HNBL concedes, as it must, is necessary before any reimbursement could be obligated. *See* Compl. ¶ 20 (noting that "Adjudication and approval . . . constituted HRSA's agreement[.]); *but see Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (An "offer is made by 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and

will conclude it.'" (quoting Restatement (Second) of Contracts § 24)).

In short, the structure of the UIP is a far cry from the situation in the cases HNBL cites. *See* Resp. 22-23. In *Thomson v. United States*, the parties were actively negotiating what was indisputably a contract: the plaintiff submitted a bid for his services, that proposal was specifically sent to, and approved by, the Attorney General to contract for the work, and the only thing missing was that the United States Attorney did not tell plaintiff that his contract had been authorized by the Justice Department. 357 F.2d 683, 687–88 (Ct. Cl. 1966). In *Silverman v. United States*, the plaintiff had a specific conversation with an official of the FTC—who had the "authority to approve vouchers for payment as representing charges for goods or services furnished to the FTC"—and who explicitly promised to pay plaintiff for particular transcripts that were being held c.o.d., but plaintiff then released to the FTC based on the promise of payment. 679 F.2d 865, 869, 871 (Ct. Cl. 1982). In *OAO Corp. v. United States*, the Air Force gave the plaintiff a sole source opportunity to bid on a procurement, "issued a formal contract document memorializing the agreement," which plaintiff "executed," but the Air Force ultimately did not sign because a change in policy resulted in the cancellation of the procurement. 17 Cl. Ct. 91, 92 (1989). In *OAO Corporation*, the Claims Court emphasized that the "circumstances of this case are unique," but found the existence of an implied-in-fact contract for start-up costs for the emergency work performed under the previously agreed-upon contract prior to the cancellation. *Id*. at 101–03.

HNBL also asserts that *Portland Mint v. United States,* 102 F.4th 1371 (Fed. Cir. 2024) is analogous and supports its claims. But this conclusion is incorrect, and the court in *Crestview,* 181 Fed. Cl. at 18, was incorrect in relying on this decision to bolster its conclusion that mere submission of a claim for reimbursement establishes a contract with HRSA. In *Portland Mint,*

performance established an implied contract only because a regulation existed stating that "[a]ny submission [of coins for redemption] . . . shall be deemed an acceptance" by the Government, and upon that basis the Federal Circuit held that the submission of the coins created an implied contract. 104 F.4th at 1375. No such similar regulation exists in this case. Further, to the extent the court in *Crestview,* 181 Fed. Cl. at 18, opined that *Sin Hang Lee v. United States*, 142 Fed. Cl. 722 (2019), is wholly inapposite to this case, based on an incorrect reading of *Portland Mint*, that persuasive authority should not be afforded weight on this point either. *Sin Hang Lee* makes clear that "mere solicitations, invitations, or instructions from the government are not offers to contract." *See* MTD at 18.

In all these cases, the critical fact was not just the work performed by the plaintiff, but the indicia of the Government's promise to pay for that work in advance of the performance and the understanding that performance was contingent on the promise. Indeed, in all these cases, there were easily-recognizable contract negotiations (or actual contracts) or regulations surrounding the implied-in-fact contract that court ultimately found. HNBL has pled nothing of the sort here (and its response to our motion does not argue such facts)—the work it was performing was always independent of any involvement from HRSA at all. HRSA did not direct which patients would be tested, how many, by which providers, or whether or which claims were submitted.

2. HNBL Fails To Rebut That It Did Not Plausibly Allege Consideration For HRSA To Pay HNBL's Claims

HNBL also fails to demonstrate that it plausibly alleged consideration for the contract that it proposes. It claims consideration was in the form of HNBL purportedly "suffer[ring] a detriment by conducting numerous tests and agreeing to forego billing the patient" and the Government purportedly "received benefits in that it was able to respond to a national emergency." Resp. 26-30. Again, neither argument passes legal muster.

First, HNBL suffered no detriment "*at the request of*" HRSA. Resp. 26 (emphasis added, quoting *Woll v. United States*, 45 Fed. Cl. 475, 477 (1999), *Estate of Bogley*, 514 F.2d at 1033, and 1 Williston, Contracts § 102 (1957)). Even if the Court were to assume that HNBL's decision to perform testing could be considered a detriment to HNBL, HRSA had no control over whether HNBL performed any tests. Moreover, there is no dispute that HNBL's performance of the tests had to be complete and fully performed *before* it could submit reimbursement claims or enter into any alleged contract with HRSA. But "[t]he general rule almost universally followed is that past consideration is no consideration." *Estate of Bogley*, 514 F.2d at 1033; *id*. at 1037 n.2 ("[P]ast services are not consideration.").

Although HNBL attempts to distinguish *City of El Centro v. United States,* 922 F.2d 816 (Fed. Cir. 1990), on the grounds that "the Government very clearly and publicly recognized a national emergency and decided it would assume the responsibility (and take a leading role) to get the Pandemic under the control," Resp. 27, that argument only highlights the insufficiency of HNBL's allegations. What remains missing is any legal hook obligating the Government to test *any* individual, and more specifically, individuals for whose tests HNBL seeks reimbursement in this lawsuit. Addressing "a national emergency" is a sovereign "responsibility," but setting aside whether it would have been good policy, the simple fact is that contrary to HNBL's assertion, "the Government did not have to test everyone through its own resources" *regardless* of whether HNBL tested anyone at all. Resp. 28.

Moreover, the decisions in *Crestview* and *Laborant* similarly fail to distinguish the Federal Circuit's decision in *El Centro.* Resp. at 27-28. The court in *Crestview* incorrectly concluded that HRSA was "commanded" to use funds to reimburse. 181 Fed. Cl. at 21. But none of the statutes undergirding the funding for the Uninsured Program mandated that the

HRSA was required to pay for any reimbursement claim merely because it was submitted. A key consideration in the *El Centro* decision was that "[b]ecause the Government was not required to provide care to the [uninsured individuals], the care provided by [HNBL] benefited the [uninsured individuals], not the Government. Therefore, the Government received no consideration to support an implied-in-fact contract." *See El Centro*, 922 F.2d at 823. Further, to the extent HRSA's decision to approve claims submitted would require entities like HNBL to "forbear" from exercising its right to collect from the uninsured individual, *see Laborant*, 180 Fed. Cl. at 86, this forbearance could only constitute consideration after HRSA had approved claims for reimbursement, because only at that point could it be reasonably argued that the United States could have assumed responsibility to pay.

The *Algonac Mfg. Co. v. United States* case cited by HNBL is also not to the contrary. Resp. 29–30. As HNBL recognizes, the "benefit" to the Government in that case was "clear" because plaintiff "had 'stored and cared for the [government's] property for 10 years.'" Resp. 29 (alteration in original, quoting 428 F.2d 1241, 1257 (Ct. Cl. 1970)). We do not dispute that caring for the Government's property can constitute a direct benefit to the Government. But HNBL's attempt to broaden that quite self-executing observation into an argument about receiving reimbursements, ongoing expectations, or the Government's general desire for individuals to get tested cannot be sustained. *See* Resp. 30.

At the outset, none of those arguments have anything to do with consideration (or lack thereof). HNBL's subjective expectations are legally irrelevant because it is black-letter law "that the parties' objective, expressed intent—not their secret, subjective intent—controls whether a bargain has been struck." *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1053 (Fed. Cir. 2001). And as both the *Algonac* court itself, and other binding precedent, expressly

recognize, there can be no claim based on an implied-in-*law* contract with the United States. 428 F.2d at 1255–56 (explaining that it does not have jurisdiction over claims based on a contract implied in law); *see* MTD 23-24. Thus, as our motion explained, even the "fact that the United States may benefit from the . . . services provided by [plaintiff] does not create an implied-in-fact contract to pay for those services." *City of Cincinnati v. United States*, 153 F.3d 1375, 1378 (Fed. Cir. 1998); *Trauma Serv. Grp.*, 104 F.3d at 1327 (no implied in fact contract to reimburse healthcare services received, even if they were considered to be to the benefit of the Government). HNBL's response, once again, entirely ignores these binding precedents we cited in our motion.

3. HNBL Fails To Rebut That It Did Not Plausibly Allege That Anyone With Actual Authority Bound HRSA To Pay HNBL's Claims

As we explained in our motion, contracts with the Government require "that the officer whose conduct is relied upon had actual authority to bind the government in contract" to the promise alleged to have been breached. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989); MTD Section III.A.3. HNBL does not dispute that rule, nor does it dispute that the risk of a Government agent lacking the necessary authority falls squarely on the private party. Instead, HNBL leans particularly hard into the idea that this legal requirement can be met now through "a general allegation," which they can attempt to prove later, that because then-Secretary of HHS Becerra had authority to bind the United States someone must have exercised authority to bind HRSA to reimburse all submitted claims. Resp. 22–26. HNBL is incorrect.

First, no government official has authority to "make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation" under the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A). Therefore, general statements made by then-Secretary Becerra could not bind the United States for any and every

potential reimbursement claim that might be made because the Secretary would have no ability to quantify the amount of those potential reimbursements *before* any claim was even submitted. To the extent the court in *Crestview*, 181 Fed. Cl. at 22, relied on the allegations about then-Secretary Becerra's authority, that conclusion is incorrect.

Moreover, at some level, *everything* HHS does must be authorized by the Secretary (or his designees)—that is where the buck stops—and there is no dispute that the Secretary authorized the existence of the UIP and exercised his discretion to allocate funding to that program. But that does not help HNBL here. As the case HNBL itself relies on confirms, HNBL must allege facts that would plausibly suggest that the Secretary "commit[ted] the government *to the contractual undertaking that [plaintiff] is trying to enforce*." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1379 (Fed. Cir. 2001) (emphasis added). HNBL offers *no* facts to suggest that Secretary Becerra considered or authorized payment of HNBL's specific claims here. Indeed, the allegations in the complaint "and through documents fairly incorporated" therein, Resp. 31-33, demonstrate the opposite: HNBL's claims were not adjudicated or approved, but were paused in accordance with the standard operating procedures for placing providers on hold. *See* MTD 26-27.

Second, the court in *Laborant*, 180 Fed. Cl. at 88, misapplied the decision in *Sommers Oil Co.,* 241 F.3d at 1380. That case does not stand for the proposition that HNBL can avoid identifying any individual at HRSA or HHS responsible for entering the alleged implied-in-fact contract with HNBL, yet that is what the court in *Laborant* appears to have held. 180 Fed. Cl. at 88. The complaint in *Sommers Oil* included specific factual allegations—who, what, and when—that allowed the Court to accept a reasonable inference of authority sufficient to survive a motion to dismiss. 241 F.3d at 1379-80 (describing specific individuals making specific

agreements and taking particular actions). By contrast, HNBL's complaint offers nothing more than a naked legal conclusion that authority existed. Compl. ¶ 19; *but see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). HNBL's attempts to bolster that naked legal conclusion in its response only further confirms that dismissal is necessary.

There can also be no doubt that the Court can, and properly has, dismissed complaints at the initial pleading stage because a plaintiff failed to plausibly allege authority. In *Trauma Services Group* plaintiff sought "reimbursement for the Government's use of [an] x-ray technician" in the course of a partnership between a military treatment facility and a civilian health care provider. 104 F.3d at 1323–24. The Court of Federal Claims dismissed, and the Federal Circuit affirmed, holding that "the trial court properly granted the motion to dismiss" for failure to state a claim because, *inter alia*, "[plaintiff] does not identify any particular Government representative . . . who entered into the alleged implied-in-fact contract, let alone a Government representative who could have been duly authorized to do so." *Id*. at 1323, 1327. So too, in *Sin Hang Lee v. United States* this Court dismissed the case because, *inter alia*, the amended complaint does not plausibly allege authority to contract. 142 Fed. Cl. at 732–33. Again, the Federal Circuit affirmed, holding "that the trial court did not err in holding that [plaintiff's] amended complaint fails to allege that a [Government] employee had the requisite actual authority to enter into the alleged implied-in-fact contract[.]" *Sin Hang Lee v. United States*, 819 F. App'x 908, 913 (Fed. Cir. 2020).

Notably, in both these cases plaintiffs offered far more by way of factual allegations than HNBL's conclusory pleading. *Compare Sin Hang Lee*, 819 F. App'x at 912–13 & *Trauma Serv. Grp.*, 104 F.3d at 1327 (both discussing, though rejecting, substantive theories of specific sources of authority), *with* Compl. ¶ 19. It would subvert the very foundation of pleading

standards for HNBL to be put in a more advantageous position by saying less.

4. HNBL Fails To Rebut That It Did Not Plausibly Allege That HRSA Intended To Be Contractually Bound To Pay HNBL's Claims

We also explained in our motion that HNBL's complaint fails to plausibly allege that HRSA made a voluntary and knowing undertaking obligating the Government to pay HNBL's claims, which is the necessary threshold condition for contract formation. *See* MTD Section III.A.4. HNBL first responds that "circumstantial and documentary evidence may be used to support an intent to contract by an agency." Resp. 20. That observation is true as far as it goes but does not help HNBL here. As the Federal Circuit has made explicit, it is the *quality* not the *quantity* of the evidence and allegations that matter. *D & N Bank v. United States*, 331 F.3d 1374, 1377–78 (Fed. Cir. 2003). "Although a contract may arise as a result of the confluence of multiple documents, there must still be a clear indication of intent to contract and the other requirements for concluding that a contract was formed." *Id*. at 1378. It is that "clear indication of intent to contract" that HNBL is missing.

That is, the "circumstantial and documentary evidence" HNBL points to—the webinars and public information campaign about the UIP and the terms and conditions associated with participating in the UIP—demonstrate "invitations, or instructions from the government" or "statements of information or definition" which "are not statements of obligation" by HRSA to pay any given future claim nor "offers to contract that can bind the government." *Chattler v. United States*, 632 F.3d 1324, 1330 (Fed. Cir. 2011); *Sin Hang Lee*, 142 Fed. Cl. at 731 (collecting cases).

HNBL does not address the Federal Circuit's *Chattler* decision at all, and although HNBL tries to distinguish *Sin Hang Lee* on its facts, it ignores the body of case law supporting the principle applied in that case. *See* Resp. 24-25. In particular, the *Sin Hang Lee* court cited

*XP Vehicles, Inc. v. United States*, where plaintiffs alleged a breach of an implied in fact contract because they submitted what they claimed to be "meritorious" loan applications that were denied allegedly "because of corrupt political influence." 121 Fed. Cl. 770, 774 (2015). As that court explained in dismissing the complaint, "there is nothing inherent in an agency's invitation to the public to apply for a loan that constitutes an offer to contract, or that forms the basis for a contract once an application is submitted, even if the application criteria are ostensibly met." *Id.* at 785–86 (collecting cases). That observation similarly disposes of HNBL's claims here: that HRSA, undisputedly, invited healthcare providers to submit claims to the UIP is legally insufficient to form a contract even if HNBL had submitted ostensibly reimbursable claims.

HNBL's further argument that "this Court has recognized that terms and conditions . . . *can* serve as the basis for an express or implied contract with the United States," Resp. 25 (emphasis added), is facially insufficient to establish that HRSA intended to contractually bind itself to pay HNBL's claims here. Indeed, the sole case HNBL cites in support is easily distinguishable. In *Thermalon Indus. v. United States*, the "plaintiff submitted an offer in response [to a solicitation], [the Government] issued an award," and plaintiff then began working on the grant project subject to the terms of that grant award. 34 Fed. Cl. 411, 415 (1995). That court found that those terms and conditions—governing the award made to plaintiff—could contractually constrain the parties' interactions with respect to that issued grant. *Id.* But there is no dispute that the UIP terms and conditions similarly imposed binding obligations on HNBL with respect to paid claims, if any, *e.g.* complying with HRSA's audit requests. What the UIP terms and conditions do not evidence is an undertaking by HRSA to pay additional future claims.

The upshot of HNBL's argument here is that HRSA was obligated—in mandatory and/or contractual terms—to reimburse an *unbounded* number of COVID-19 tests for uninsured

patients. HRSA did not direct or have any control over how many tests were performed, when, by whom, or what claims were submitted. It is implausible on its face—and directly contradicted by Congress's finite funding appropriation, the Secretary's undisputed discretion in allocating those finite funds, HRSA's repeated emphasis that the program was "subject to available funding," *see* A3, A11-12, A18, A30-62, A100-103, and the claim adjudication process itself—that any agency would make such a commitment or that Congress would compel it to.

IV. HNBL Cannot Sidestep The Consequences Of The Fiscal Responsibility Act

Finally, HNBL argues that the Fiscal Responsibility Act—rescinding the unobligated funds from the appropriations used to support the UIP—is "not relevant," that HNBL's mere pronouncement that the payments it seeks are "obligated" claims is sufficient to proceed to discovery, and that "submission of the claims is the only act necessary to obligate the reimbursement." Resp. 34-36. HNBL is wrong on all counts.

HNBL insists that the Fiscal Responsibility Act is irrelevant because it alleges that its claims were obligated. Resp. 35; Compl. ¶ 21. But that argument implicitly concedes that if its claims stood unobligated upon the passage of the Fiscal Responsibility Act, the case should be dismissed. More importantly, HNBL explicitly concedes that only "[a]djudication and approval" would "constitute[] HRSA's agreement and legal liability to pay." Compl. ¶ 20. This concession renders the Fiscal Responsibility Act directly relevant to this case, and dispositive in this situation because none of HNBL's reimbursement claims were ever adjudicated to approval. Nor does HNBL allege that its claims were approved. *See id.* ¶ 42 (alleging only that HRSA represented that "after the pending claims assessment is completed, any claims that your organization successfully submitted prior to [April 6, 2022] and were placed on hold may be paid subject to the availability of finding."). From this, HNBL asks the Court to infer that its claims were obligated, even though that inference would be directly contradicted by the underlying

document cited and HNBL's other allegations. The "pending claims assessment" indicated the opposite—that no claims became obligated while HNBL was on hold.

Further, to the extent the courts in *Crestview*, 181 Fed. Cl. at 24, and *Laborant* 180 Fed. Cl. at 89, concluded that the Fiscal Responsibility Act does not extinguish claims like HNBL's in this case, those decisions reached that conclusion from the incorrect premise that a claim need only be submitted to create an obligation for HRSA to pay that claim. But as we have explained, the mere submission of a claim for reimbursement could not establish liability to pay because such a conclusion would run afoul of the Anti-Deficiency Act. At bottom, HNBL fails to plead facts that would plausibly suggest that any of its claims were obligated at the time the Fiscal Responsibility Act took effect. Thus, the rescission of funding extinguishes HNBL's claims.

CONCLUSION

For the foregoing reasons, and those in our motion, the case should be dismissed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

/s/ Vincent D. Phillips, Jr.
VINCENT D. PHILLIPS, JR.
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 305-4591
Vincent.Phillips2@usdoj.gov

OF COUNSEL

ERIN PODOLNY
LU HAN
Public Health Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

August 18, 2026

*Attorneys for the United States*